# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* L.S.

No. 19-0934 (Cabell County 18-JA-123)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.S., by counsel Michael S. Bailey, appeals the Circuit Court of Cabell County's September 16, 2019, order terminating his parental rights to L.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Eric Anderson, filed a response on behalf of the child in support of the circuit court's order and a supplemental appendix. On appeal, petitioner alleges that the circuit court erred in terminating his parental rights because the conditions of neglect were corrected and the DHHR failed to make reasonable efforts to reunify the family.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2018, the DHHR filed an abuse and neglect petition against the parents that primarily outlined the mother's extensive substance abuse while caring for the child. In relation to

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]In his table of contents, petitioner lists a second assignment of error that is drastically different from the one presented in his argument section. Because the second assignment of error set forth in the argument section of petitioner's brief corresponds to the actual argument that follows, and considering that the second assignment of error in the table of contents does not correspond to the argument set forth later, the Court will disregard the second assignment of error from the table of contents in favor of the one set forth in petitioner's argument section.

1

petitioner, the DHHR alleged that he failed to support the child financially. The petition detailed the fact that petitioner had custody of the child for "about two weeks" prior to the petition's filing after he sought a domestic violence protective order against the mother. However, petitioner decided to dismiss the petition for the protective order, after which petitioner permitted the mother to see the child. At that point, petitioner alleged that the mother "snatched [the child] and would not give her back," although the mother asserted that petitioner left the child in her care. According to the DHHR, petitioner reported that he contacted law enforcement, "but they could do nothing." Petitioner thereafter waived his right to a preliminary hearing and was granted supervised visitation with the child, provided that he pass two drug screens.

At a hearing in September of 2018, in response to petitioner's request for unsupervised visitation with the child, the circuit court ordered that petitioner undergo two weeks of supervised visitation. If the DHHR reported that these visits were positive, then petitioner could begin unsupervised visits if his drug screens remained negative. Subsequently, petitioner was adjudicated on the basis that he financially neglected the child. The circuit court granted petitioner a post-adjudicatory improvement period, wherein petitioner would have to comply with the terms and conditions of the family case plan approved by the multidisciplinary team and agreed to by petitioner. According to the record, petitioner's case plan required that he obtain a stable home; secure employment to provide for the child, or otherwise ensure that his benefits were up to date and active; cooperate with parenting and adult life skills services; complete all tasks and recommendations of the services; and continue drug screening in order to receive visitation, among other requirements.

Based on a court summary from the DHHR filed in February of 2019, petitioner tested positive for marijuana, tramadol, and alcohol on various screens between October of 2018 and February of 2019. The DHHR also indicated that petitioner only sporadically met with his parenting and adult life skills provider and that petitioner was still unemployed and informed a service provider that he might have to find other housing. Because of petitioner's noncompliance, the DHHR recommended the termination of his improvement period. Despite this evidence, the circuit court permitted petitioner's improvement period to continue and clarified that a screen that was positive for alcohol would be considered a positive drug screen for purposes of the requirement that petitioner pass two screens before visiting the child.

According to evidence from the DHHR at a later hearing, petitioner was given a "FUP letter on March 21, 2019, to enable him to obtain housing." Petitioner, however, indicated his belief that he would not be eligible for this benefit. Thereafter, petitioner's improvement period was continued again. However, the DHHR submitted evidence in June of 2019 that petitioner had not visited with the child, drug screened, or met with his parenting and adult life skills supervisor since late April of 2019. The DHHR further indicated that petitioner was arrested in May of 2019 on charges of public intoxication, disorderly conduct, and domestic assault. The DHHR again moved for the termination of petitioner's improvement period.

At a hearing in June of 2019, the guardian proffered that petitioner's arrest was his second since the initiation of the proceedings, given that petitioner was also arrested in July of 2018 for the offense of felony strangulation. Based on this evidence, the circuit court terminated petitioner's improvement period upon the guardian's motion.

In August of 2019, the circuit court held a dispositional hearing, during which petitioner testified and admitted that he had been arrested three times since November of 2017, all for crimes of violence. According to petitioner, he was arrested in November of 2017 and charged with felony strangulation against his sister, after which he pled guilty to the lesser-included offense of misdemeanor domestic battery; he was arrested in July of 2018 and charged with felony strangulation against his girlfriend, although that charge was dismissed because his girlfriend chose not to press charges; and he was arrested in May of 2019 and charged with public intoxication, disorderly conduct, and domestic assault stemming from an incident that occurred at his mother's residence. Petitioner also testified that he had a problem with alcohol abuse and admitted that he did not stop drinking after he was informed that he could not have visits with the child if he tested positive for alcohol. According to petitioner, as of the dispositional hearing he lived with his mother and had been employed at a bar for "about five months." In response, the DHHR asserted that petitioner's parental rights should be terminated because he failed to comply with the terms of his improvement period by not obtaining appropriate housing. Ultimately, the circuit court found that petitioner failed to comply with the requirements of his case plan during his improvement period and that termination of his parental rights was in the child's best interests. Accordingly, the circuit court terminated petitioner's parental rights.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that termination of his parental rights was inappropriate because the circumstances of neglect at issue (failure to financially support the child) no longer existed. This argument, however, is premised on factual assertions that are simply inaccurate. Specifically, petitioner asserts that this circumstance of neglect "was clearly and undisputedly corrected when he took custody of his daughter" and filed for a protective order against the mother "before the current case was filed." This assertion is erroneous for several reasons. First, the record

---

[3]The mother's parental rights were also terminated. According to respondents, the permanency plan is adoption in the current foster home.

shows that petitioner not only failed to follow through with his efforts to protect the child from the mother by dismissing his petition for a protective order, but also allowed the mother to see the child following the dismissal, at which point she resumed custody of the child. As such, contrary to petitioner's assertion that he "took custody of his daughter" prior to the case being filed, the record is clear that at the time the case was initiated, the child was not in his custody.

Petitioner also argues that termination was inappropriate because there was "no finding of unfitness on [his] part." It is unclear why petitioner believes that he was never found to be unfit, given that the circuit court's adjudicatory order was clear that petitioner was "adjudicated as a neglectful parent based on financial neglect of the minor child." Petitioner does not challenge his adjudication on appeal. In fact, his arguments are all predicated on the assumption that he corrected the condition of neglect upon which he was adjudicated. As such, it is clear that the circuit court made a finding that petitioner was unfit based on his neglect of the child.

Contrary to petitioner's assertion that he fully complied with his improvement period, the record shows that he was only occasionally compliant. While petitioner highlights evidence that supports his position, he ignores evidence that shows he failed to fully comply, such as his numerous positive drug screens between October of 2018 and February of 2019 and his failure to consistently attend parenting and adult life skills services and visits with the child. Further, the record shows that petitioner continued in his inability to properly support the child, as the DHHR asserted that he lacked appropriate housing as of the dispositional hearing, despite the DHHR's assistance with his application for housing benefits. Indeed, the record shows that petitioner admitted he lived with his mother at the time of the dispositional hearing, which is the home where the domestic violence incident that led to petitioner's arrest in May of 2019 occurred. Petitioner argues extensively that his arrests for domestic violence should not have been considered because he was not adjudicated for domestic violence nor was he convicted of a crime as a result of the incident at his mother's home. However, the fact remains that this was all relevant information for the circuit court to consider in determining if petitioner successfully completed his improvement period and corrected the condition of neglect sufficient to return the child to his care. As such, it is clear that the condition of neglect for which petitioner was adjudicated persisted as of the dispositional hearing.

Below, the circuit court found that petitioner "failed to comply with the requirements of his family case plan" during the proceedings. Contrary to petitioner's assertion that the circuit court failed to make appropriate findings in its adjudicatory order, this is a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected. *See* W. Va. Code § 49-4-604(c)(3) (2019) (providing that "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" exists when the abusing parent has "not responded to or followed through with a reasonable family case plan").[4] Based upon the extensive evidence set forth above, the circuit court also found that it would be contrary to the child's best interests to be returned to petitioner's care, making termination of his parental rights necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6) (2019), circuit courts may terminate parental rights upon these findings. Additionally, this Court has held that

---

[4]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court did not err in terminating petitioner's parental rights.[5]

Finally, petitioner argues that the DHHR failed to make reasonable efforts to reunify the family. However, the argument in support of this assignment of error is, essentially, just a retread of the prior assignment of error, including the same fallacious assertions about never having been found to be unfit and that his arrests were irrelevant to disposition because the petition was not amended to include this conduct. Regardless of petitioner's assertions, the record is clear that the DHHR complied with the directive in West Virginia Code §§ 49-4-604(b)(6)(C)(iii) and (iv) (2019) that it make reasonable efforts to reunify the family by providing petitioner with services designed to remedy the conditions of neglect so the child could be returned to the home. This included the DHHR's efforts to assist petitioner obtain housing, drug screens, supervised visitation, and adult life skills and parenting education. Contrary to petitioner's argument that the DHHR failed to make efforts in this regard, the record shows that it was petitioner who failed to consistently comply with these services or otherwise remedy the conditions of neglect at issue. As such, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 16, 2019, order is hereby affirmed.

Affirmed.

---

[5]In support of this assignment of error, petitioner also alleges that the circuit court erred in "not accepting the proposed voluntary relinquishment of guardianship" rights. However, petitioner waived this issue on appeal. At the dispositional hearing, petitioner's counsel indicated that petitioner discussed voluntary relinquishment of his guardianship rights with the DHHR and the guardian. According to the record, petitioner's counsel informed the circuit court that "the guardian ad litem and the Department are not willing to accept that" and that petitioner was "not willing to relinquish his parental rights." Petitioner's counsel informed the circuit court that, as a result of this disagreement between the parties, "we would ask for a hearing." From this exchange, it is clear that petitioner never asked the circuit court to accept his voluntary relinquishment and, thus, waived appellate review of this issue. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009).

**ISSUED**:  June 24, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

6